## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

———————————————————— )
HARMONIA HOLDINGS GROUP, LLC, )
                              )
             Plaintiff, )        No. 21-1704C
                              )
        v. )        Filed: September 27, 2021
                              )
THE UNITED STATES, )        Re-issued: October 12, 2021
                              )
             Defendant, )
                              )
and )
                              )
PERATON INC., )
                              )
             Defendant-Intervenor. )
———————————————————— )

### OPINION AND ORDER

Plaintiff Harmonia Holdings Group, LLC requests that the Court preliminarily enjoin the performance of a sole source bridge contract awarded by the Internal Revenue Service ("IRS" or "Agency") to Defendant-Intervenor Peraton Inc. ("Peraton") following the cancellation of the solicitation that is the subject of this bid protest. For the foregoing reasons, the Court finds Plaintiff has failed to demonstrate the requisite factors to obtain the relief it seeks. Accordingly, Plaintiff's Motion for Preliminary Injunction is **DENIED**.

## I.  BACKGROUND

### A.  The Original Solicitation and Bid Protests

In early 2020, the IRS solicited bids from contractors to develop and execute software application testing to assist with the IRS's tax administration systems and applications related to

intake, processing, and customer support during tax season.[1]  Prelim. Admin. R. ("Prelim. AR")
at 74–186, ECF No. 25; *see* Def.'s Resp. to Revised Mot. for Prelim. Inj. at 9, ECF No. 30; Pl.'s
Revised Mot. for Prelim. Inj. at 6, ECF No. 29.  The bids were evaluated based on six factors: (1)
Mandatory Requirements, (2) Technical Support, (3) Relevant Experience, (4) Past Performance,
(5) Management Approach, and (6) Price.  Prelim. AR 168; *see* ECF No. 29 at 7–8.

The IRS received 33 bids and on December 7, 2020 awarded four blanket purchase
agreements ("BPA"), one of which went to Plaintiff.  Prelim. AR 62; *see* ECF No. 30 at 9.  Prior
to this request for bids, the testing support services had been provided by Northrop Grumman
Systems Corporation (now Peraton) for 22 years.  Prelim. AR 2; *see* ECF No. 29 at 6.  The award
was protested by three unsuccessful offerors, including Northrop Grumman, at the Government
Accountability Office ("GAO").  ECF No. 30 at 9.  The protestors alleged that the IRS's
evaluations of the proposals (as to both the protestors and the awardees) were arbitrary and that its
price analysis and best value determinations were flawed.  *Id.*; *see* Prelim. AR 3–6.

### B.    Corrective Action and Cancellation of the Solicitation

In response to the protests, on December 30, 2020, the IRS notified the GAO that it would
take corrective action by reevaluating the three protesters' bids under factors 2, 3, and 4;
reassessing factor 5; and reassessing the price realism evaluation of the protestors and of the most
qualified offerors.  Prelim. AR 735.  The IRS would then issue a new technical evaluation report
("TER") and source selection decisions.  *Id.*  Performance of the BPAs would remain stayed during
this process.  *Id.*  Following the reevaluation and award, the IRS would lift the stay of the awarded

---

[1]  The solicitation sought proposals from offerors holding contracts under the General
Services Administration ("GSA") Federal Supply Schedule 70, with the intent to award four
multiple award, blanket purchase agreements to procure information technology services to
support the IRS.  *See* Def.-Intervenor's Resp. to Revised Mot. for Prelim. Inj. at 6, ECF No. 31.

contracts, if they remained the best value to the Government, or would cancel any award that no longer represented the best value to the Government and issue new or additional awards if the Agency determined it would be in the Government's best interest. *Id.* The IRS further stated that additional corrective action may be taken if appropriate. *Id.* As a result, on January 19, 2021, the GAO dismissed the protests as "academic." *Id.* at 738, 740, 742.

As of May 17, 2021, the Agency's corrective action remained incomplete. *Id.* at 747. IRS had been unable to adequately complete a TER addressing all the evaluation factors. *Id.*; *see* ECF No. 30 at 10. It noted in an internal presentation that "the evaluation ratings are not supported, specifically strengths do not show how the Government will benefit and weaknesses don't show any risk." Prelim. AR 748. Additionally, the Agency's legal office had concerns that the technical evaluation panel ("TEP") was biased against Northrop Grumman. *Id.* IRS also had not finished its reassessment of factor 5. *Id.* at 749. The internal presentation further noted the Agency's concern about a lapse in service, expected July 25, 2021, and the need for a sole source bridge contract if it could not complete the reevaluation by the expiration of the existing contract with Peraton. *Id.* at 744, 747. The internal presentation put forth two solutions: (1) complete the corrective action, notify the offerors, and see if the new reevaluation is protested; or (2) cancel the award, start the acquisition process over, and issue a sole source bridge contract to allow time for the re-compete. *Id.* at 748–49; *see* Pl.'s Reply in Support of Revised Mot. for Prelim. Inj. at 6, ECF No. 32. It noted that a sole source bridge contract might be necessary even if the Agency proceeded with the first option. Prelim. AR 749.

On May 26, 2021, the Acting Director of the Office of Information Technology Acquisition, Steven Brand, agreed that "canceling the current solicitation and starting over is the

right course of action" and that, as discussed, the IRS would need "to execute a bridge contract that will provide [the Agency] time for the re-compete." *Id.* at 750.

### C.    Sole Source Bridge Contract Awarded to Peraton

The IRS filed a Justification for an Exception to Fair Opportunity on July 22, 2021, to obtain approval to issue a task order under the Alliant 2 Governmentwide Acquisition Contract ("GWAC") to Peraton "to provide continued services while the re-compete process is completed." *Id.* at 752; *see* ECF No. 30 at 11. The IRS explained that the need to avoid a lapse in service was urgent enough that "providing a fair opportunity would result in unacceptable delays." Prelim. AR 752 (citing Federal Acquisition Regulation ("FAR") 16.505(b)(2)(i)(A)). It intended to award the sole source bridge contract to Peraton, the incumbent, because Peraton's "experience, technical expertise and . . . high level of resources in place" would allow it to continue services more efficiently and with less costs than if a new contractor were selected. *Id.* at 753. The justification was approved, and Peraton was awarded an approximately $17.7 million contract, with a 12-month term beginning July 26, 2021 followed by three four-month option periods. *Id.* at 754; Def.-Intervenor's Resp. to Revised Mot. for Prelim. Inj. at 9, ECF No. 31. On August 11, 2021, the IRS notified the public of the decision. Prelim. AR 937–40.

On August 17, 2021, Plaintiff filed a bid protest action in this Court, along with a motion for a preliminary injunction. *See* Pl.'s Compl., ECF No. 1; Pl.'s Mot. For Prelim. Inj., ECF No. 3. In accordance with the Court's scheduling order (ECF No. 14), Defendant filed a preliminary administrative record and Plaintiff subsequently filed a revised preliminary injunction motion. *See* ECF Nos. 25, 29. Plaintiff's Motion seeks an order preliminarily enjoining the IRS from allowing Peraton to perform the current bridge task order. ECF No. 29 at 22.

## II.   DISCUSSION

### A.      Standard of Review

In a bid protest action, this Court may issue a preliminary injunction pursuant to 28 U.S.C. § 1491(b)(2) and Rule 65 of the Rules of the United States Court of Federal Claims ("RCFC").  A preliminary injunction, however, is an "extraordinary remedy, which should not be granted as a matter of course."  *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010).  To obtain preliminary relief, the movant has the burden of demonstrating that: (1) it will suffer irreparable injury if the injunction is not granted; (2) there is a reasonable likelihood of success on the merits of its claim(s) at trial; (3) the harm suffered by the movant, if the injunction is not granted, will outweigh the harm suffered by the Government and any third-parties; and (4) granting the injunction would not be contrary to the interest of the public.  *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also MORI Assocs. v. United States*, 102 Fed. Cl. 503, 519 (2011) (citing *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993)).

No one factor is dispositive, and the weakness of one factor may be sufficient to justify denial of preliminary relief depending on the weight (or lack thereof) assigned to the remaining factors.  *Sumecht NA, Inc. v. United States*, 923 F.3d 1340, 1348 (Fed. Cir. 2019) (citing *Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.*, 908 F.2d 951, 952 (Fed. Cir. 1990)).  At the least, the "movant must establish *both* 'likelihood of success on the merits and irreparable harm' for the court to grant a preliminary injunction."  *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 676 F. App'x 980, 984 (Fed. Cir. 2017) (quoting *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001) (emphasis added)).

**B.      Plaintiff's Request for a Preliminary Injunction Must Be Denied.**

Plaintiff has not met its burden to justify the extraordinary relief of preliminarily enjoining the Agency's award to Peraton pending a final determination in this bid protest action. As discussed below, the preliminary injunction factors weigh in favor of denying Plaintiff's Motion.

1.      <u>Likelihood of Success on the Merits</u>

To assess Plaintiff's likelihood of success, the Court must evaluate both jurisdictional and merits arguments. Defendant and Peraton raise objections to the Court's jurisdiction over some or all of Plaintiff's claims pursuant to the Federal Acquisition Streamlining Act of 1994 ("FASA"), 41 U.S.C. § 4106. The Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996 ("ADRA"), Pub. L. No. 104-320, 110 Stat. 3870 (1996), provides the Court with "jurisdiction to render judgment on an action by an interested party objecting to": (1) "a solicitation by a Federal agency for bids or proposals for a proposed contract," (2) "a proposed award or the award of a contract," or (3) "any alleged violation of a statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). FASA, however, bars protests that are "in connection with the issuance or proposed issuance of a task or delivery order."[2] 41 U.S.C. § 4106(f). The Federal Circuit has recognized the FASA protest bar as expansive and unyielding. As it explained in *SRA International, Inc. v. United States*,

> [t]he statutory language of FASA is clear and gives the court no room to exercise jurisdiction over claims made "in connection with the issuance or proposed issuance of a task or delivery order." Even if the protestor points to an alleged violation of statute or regulation, as [plaintiff] does here, the court still has no jurisdiction to hear the case if the protest is in connection with the issuance of a task order. We acknowledge that this statute is somewhat unusual in that it

---

[2] The FASA bar does not apply to two types of protests: (1) "a protest on the ground that the [task or delivery] order increases the scope, period, or maximum value of the contract under which the order is issued" and (2) "a protest of an order valued in excess of [$10 million]." 41 U.S.C. §§ 4106(f)(1)(A)–(B). Protests in the latter category fall within the exclusive jurisdiction of the GAO. *Id.* § 4106(f)(2).

> effectively eliminates all judicial review for protests made in connection with a procurement designated as a task order—perhaps even in the event of an agency's egregious, or even criminal, conduct. Yet Congress's intent to ban protests on the issuance of task orders is clear from FASA's unambiguous language.

766 F.3d 1409, 1413 (Fed. Cir. 2014).

Defendant and Peraton argue that FASA precludes the Court from exercising jurisdiction over Plaintiff's challenge to the task order issued to Peraton. *See* ECF No. 30 at 19–20; ECF No. 31 at 9–14. Peraton goes one step further, arguing that because of the way Plaintiff framed its allegations the "Complaint and Motion are 'in connection with' the Agency's award to Peraton of the Task Order Bridge," and thus this Court is "deprive[d] . . . of jurisdiction over the entirety of the protest." ECF No. 31 at 13 (citing *SRA Int'l*, 766 F.3d at 1414). Conversely, Plaintiff argues the FASA protest bar is inapplicable to this matter altogether. ECF No. 32 at 3. According to Plaintiff, the case "does not revolve around the Agency's arbitrary and unlawful issuance of a sole source contract to Peraton" but instead "relates to the Agency's decision to cancel the BPA awards and ignore its stated corrective action." *Id.*; *see id.* at 5 ("[Plaintiff] challenges the Agency's corrective action. Peraton's contract is a byproduct of the Agency's unlawful and arbitrary failure to follow its corrective action.").

Plaintiff's contention in briefing appears to be belied by the opening sentence of its Amended Complaint, which describes this action as "protesting [the] award to Peraton." *See* Am. Compl. at 1, ECF No. 28. Indeed, allegations throughout the Amended Complaint seem to draw a connection between the Agency's decision to cancel the solicitation and its decision to award a task order to Peraton, as well as challenge the lawfulness of and seek relief against the task order itself. *See, e.g.*, *id.* ¶ 1 ("the Agency's cancellation and corrective action, which resulted in a sole source award to Peraton, lacks a rational basis is unlawful, arbitrary and capricious"), *id.* ¶ 5 (alleging that the Agency's task order award to Peraton was unlawful); *id.* at 6 (identifying Count

7

One as, "[t]he Agency's Cancellation and Sole Source is a Violation of Law"); *id.* at 7 (seeking as part of the Prayer for Relief a preliminary and permanent injunction of the performance of the task order to Peraton).[3]  Consequently, Plaintiff's allegations could fairly be said to raise objections to the Agency's cancellation of the solicitation, "abandonment" of its stated corrective action, and the subsequent task order award to Peraton.  *See id.* ¶¶ 29–30.

The parties, however, do not contest that the Court has jurisdiction to entertain claims based on Plaintiff's first two objections, at least to the extent they are standalone claims.  The Court agrees.  Other judges of this court have held that a challenge to a solicitation cancellation decision arises under the final prong of § 1491(b)(1)—*i.e.*, an alleged violation of statute or regulation in connection with a procurement or a proposed procurement.  *See Tolliver Grp., Inc. v. United States*, 151 Fed. Cl. 70, 87 (2020); *see also MORI Assocs.*, 102 Fed. Cl. at 523 (observing that the final prong "must be the vehicle by which the remainder of [the Court's] pre-existing jurisdiction over procurement protests was preserved" after ADRA and includes a protest of a cancellation of a solicitation).  Challenges to an agency's corrective action have been categorized as arising under the Court's pre-award jurisdiction (*i.e.*, the first prong) or under the final prong, depending on the allegations.  *See Jacobs Tech. Inc. v. United States*, 131 Fed. Cl. 430, 443 (2017) (citing *Ceres Gulf, Inc. v. United States*, 94 Fed. Cl. 303, 315–16 (2010) (discussing cases related to corrective action protests as reflecting challenges to pre-award conduct) and *Sys. Application & Techs. v. United States*, 691 F.3d 1374, 1381 (Fed. Cir. 2012) (noting the first and final prongs as bases for jurisdiction to challenge a corrective action, even if not yet implemented, that plaintiffs argued was both arbitrary and capricious and involved an alleged violation of law)).

---

[3]  At oral argument, Plaintiff's counsel likewise described the cancellation decision and subsequent task order award as inextricably linked, stating that the two could not be "decoupled" and were "wrapped up in the same decision."

That the Agency decided to issue a task order to Peraton as a short-term replacement procurement vehicle does not automatically preclude the Court from exercising jurisdiction over potentially part of Plaintiff's protest. *See BayFirst Sols., LLC v. United States*, 104 Fed. Cl. 493, 503 (2012) ("It may be that each protest requires a fact-intensive inquiry as to the agency's decision-making process, and a careful analysis of the connectedness of each challenged procurement decision to the issuance or proposed issuance of a task order.").  The Court must evaluate whether the basis of and facts surrounding Plaintiff's first two objections cause them to be "logically distinct" from the subsequent issuance of the task order bridge to Peraton. *See MORI Assocs.*, 102 Fed. Cl. at 533; *see also SRA Int'l*, 766 F.3d at 1413 (explaining that "a temporal disconnect may, in some circumstances, help to support the non-application of the FASA bar"). Several courts have found such disconnection between a decision to cancel a solicitation and a decision to procure the same services through issuance of a task order. *See Tolliver*, 151 Fed. Cl. at 99 (holding "the cancellation decisions themselves are far removed from the selection of a replacement acquisition vehicle"); *BayFirst*, 104 Fed. Cl. at 507 ("The cancellation of the [s]olicitation may be viewed as a discrete procurement decision and one which could have been the subject of a separate protest."); *see also MORI Assocs.*, 102 Fed. Cl. at 525, 533–34.

Here, the Agency's decision to cancel the solicitation (rather than completing the corrective action) predates the award to Peraton and could potentially serve as an independent basis for the Court's jurisdiction; therefore, the application of the FASA protest bar to the cancellation and corrective action claims would not be unavoidable. *See BayFirst*, 104 Fed. Cl. at 507; *see also Guam Indus. Servs. v. United States*, 122 Fed. Cl. 546, 555 (2015) ("Not every decision that precedes the selection of a task order vehicle is so bound up with the proposed issuance of a task order that a protest of the decision would be prohibited by FASA." (quoting *MORI Assocs. v.*

9

*United States*, 113 Fed. Cl. 33, 38 (2013)).  While there is some causal connection between the Agency's decisions not to complete the corrective action, but rather to cancel and re-compete the solicitation, and the issuance of the task order to Peraton to avoid a lapse in service during the re-compete process, *see* Prelim. AR 748, this type of proximate causation has been recognized as insufficient to implicate the FASA protest bar for a cancellation challenge, *see BayFirst*, 104 Fed. Cl. at 507.

But accepting *arguendo* Plaintiff's disavowal that its protest concerns the Agency's award of the bridge task order to Peraton, what jurisdictional basis does the Court have to review or potentially enjoin that separate procurement decision?  *See, e.g.*, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (observing the requirement of a plaintiff to demonstrate standing for each claim and each form of relief sought); *see* ECF No. 28 at 7 (requesting in Prayer for Relief that the Court preliminarily and permanently enjoin "the performance of the sole source bridge contract issued to Peraton").  Plaintiff argues that *Tolliver* and *MORI Associates* provide the answer.  ECF No. 32 at 4–5.  As Peraton notes, these cases are arguably distinguishable.  Both involved similar circumstances: following protests of contract awards, the respective agencies committed to corrective actions before ultimately cancelling the solicitations and procuring the services under a different procurement vehicle involving task orders.  *Tolliver*, 151 Fed. Cl. at 80–83; *MORI Assocs.*, 102 Fed. Cl. at 511–16.  Unlike this case, however, the plaintiffs in *Tolliver* and *MORI Associates* raised separate challenges to the agencies' cancellation decisions (claiming they were arbitrary and capricious and violated FAR 1.602-2(b)) and the lawfulness of the replacement procurement method (claiming the agencies failed to comply with the Rule of Two).[4]

---

[4] The Rule of Two provides that "[t]he contracting officer shall set aside any acquisition over the simplified acquisition threshold for small business participation when there is a reasonable

*Tolliver*, 151 Fed. Cl. at 98–99 (holding the FASA protest bar did not preclude the court's jurisdiction over plaintiff's Rule of Two claim); *MORI Assocs.*, 102 Fed. Cl. at 533–34 (same). With respect to the latter, the courts held that the Rule of Two involved an alleged violation of law arising during a stage of the procurement process that is logically distinct from the issuance or proposed issuance of the task orders; and consequently, the FASA bar was inapplicable. *See Tolliver*, 151 Fed. Cl. at 98–99 (focusing on distinct nature of Rule of Two challenge); *MORI Assocs.*, 102 Fed. Cl at 533–34. The *Tolliver* court also held that the plaintiff's Rule of Two claim, brought under the final prong of the Court's § 1491(b)(1) jurisdiction, did not constitute a "protest" to which the FASA bar could apply. 151 Fed. Cl. at 100. It specifically noted, however, that a cancellation of a solicitation is expressly identified as a "protest" under the Competition in Contracting Act, which has been used to inform this Court's bid protest jurisdiction. *Id.* at 98–99 & n.40.

Neither court held that jurisdiction over the cancellation claims *ipso facto* conferred jurisdiction to either review or enjoin the subsequently issued task orders.[5] *See id.* at 85 n.12, 99 n.40. Moreover, although *Tolliver* articulated the plaintiffs' Rule of Two challenge as being "neither to a particular solicitation nor to the merits of an award or to a proposed award of a task order," *id.* at 105 n.48, the same cannot be said of Plaintiff's allegations here. Plaintiff does not raise a Rule of Two or similar "[d]iscrete, preliminary matter." *MORI Assocs.*, 113 Fed Cl. at 38. Rather, as part of its argument that the Agency's cancellation decision was irrational and violated

expectation that—(1) Offers will be obtained from at least two responsible small business concerns; and (2) Award will be made at fair market prices." FAR 19.502-2(b).

[5] Indeed, the Government argued in *Tolliver* that the cancellation and Rule of Two claims were separate, and the Court found independent jurisdiction for both. *Tolliver*, 151 Fed. Cl. at 99 & n.40.

FAR § 1.602-2(b), Plaintiff essentially invites the Court to evaluate the necessity of the issuance

of the task order—*i.e.*, the merits of the award.  ECF No. 29 at 18 (the "record plainly does not

support the conclusion that the corrective action could not be completed *or that the Agency's*

*chosen alternative—another 2-year sole source award—was necessary*." (emphasis added)).

FASA appears to preclude the Court from engaging in this type of inquiry.[6]  *See DataMill, Inc. v.*

*United States*, 91 Fed. Cl. 740, 757 (2010) (observing that decision to procure software program

through non-competitive sole source procurement was "by its very nature[] 'in connection with'

the 'issuance' of [the] delivery order").   Accordingly, although Plaintiff's cancellation and

corrective action claims, if they stand alone, could be within the Court's bid protest jurisdiction,

the Court finds that Plaintiff has not demonstrated at this stage a likelihood that the Court has

jurisdiction to review or enjoin the performance of the task order awarded to Peraton.

Beyond the threshold issue of jurisdiction, the Court must also examine the likelihood of

success of Plaintiff's cancelation/corrective action claims.  The Court reviews challenged agency

decisions pursuant to the Administrative Procedure Act ("APA") standard of review.  28 U.S.C.

§ 1491(b)(4).   In assessing whether an agency decision is "arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), the Court must inquire

---

[6]   If the Court analyzes Plaintiff's claims as framed in the Amended Complaint, the jurisdictional problems potentially increase.  As Peraton points out, portions of the Amended Complaint's allegations and prayer for relief arguably entwine the issuance of Peraton's task order with the remainder of Plaintiff's bid protest, which could invoke the broad application of the FASA bar to the entirety of Plaintiff's protest  *See SRA Int'l*, 766 F.3d at 1414 (examining the relief sought and determining it, while not dispositive, to be demonstrative that the protest actually concerned the issuance of the task order); *Mission Essential Pers., LLC v. United States*, 104 Fed. Cl. 170, 179 ("The fact that [plaintiff's] requested relief bears directly on the Army's task orders strongly indicates that this protest is 'in connection with the issuance' of those task orders."); *see also DataMill, Inc. v. United States*, 91 Fed. Cl. 740, 757 (2010).  It is not necessary to resolve these arguments now, but they give some weight to the Court's determination that Plaintiff has not met its burden on the likelihood of success factor as it relates to the jurisdictional objections to any task order-related claim or relief.

if: "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure," *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001). Challengers bear the "'heavy burden' of showing that the award decision 'had no rational basis.'" *Id*. at 1333 (quoting *Saratoga Dev. Corp. v. United States*, 21 F.3d 445, 456 (D.C. Cir. 1994)). A challenge alleging a violation of a regulation or procedure requires plaintiffs to prove "a clear and prejudicial violation of applicable statutes or regulations." *Id*. (quoting *Kentron Haw., Ltd. v. Warner*, 480 F.2d 1166, 1169 (D.C. Cir. 1973)).

The Federal Circuit has described the arbitrary and capricious standard applicable to the bid protest context as "highly deferential." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000). Because the "greater the discretion granted to a contracting officer, the more difficult it will be to prove the decision was arbitrary and capricious," a plaintiff's heavy burden in challenging a cancellation decision is weightier. *Galen Med. Assocs. v. United States*, 369 F.3d 1324, 1330 (Fed. Cir. 2004) (quoting *Burroughs Corp. v. United States*, 617 F.2d 590, 597 (Ct. Cl. 1980)). This is because a contracting officer's discretion is at its "greatest" when "deciding to cancel a negotiated procurement." *Madison Servs., Inc. v. United States*, 92 Fed. Cl. 120, 125 (2010); *see also Am. Gen. Leasing, Inc. v. United States*, 587 F.2d 54, 58–59 (Ct. Cl. 1978).

According to Defendant, the reasons underlying the cancellation decision, and by extension the decision to end the corrective action, are twofold: (1) between January 2021, when the Agency announced the corrective action, and mid-May 2021 the technical team was unable to adequately complete the TER; and (2) the Agency's legal division had concerns that the TEP was biased against Northrop Grumman. *See* ECF No. 30 at 16–17 (citing Prelim. AR 747, 748). Upon an

initial review of the limited record, and with the deferential standard of review in mind, both reasons could potentially provide a rational basis for cancelling the solicitation, considering the risk of a lapse in critical services and the importance of maintaining the integrity of the Agency's procurement process. That being said, Plaintiff raises legitimate concerns about the sufficiency of the Agency's explanation in support of its decision. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983) (authorizing courts to set aside agency action where the agency fails to "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made"); *see also Fla. Power & Light Co. v. Lorion*, 470 U.S. 749, 743–44 (1985). The sum of the Agency's reasoning is contained in only an undated PowerPoint presentation, which provides no further context beyond conclusory statements, and a single e-mail from the Acting Director of the Office of Information Technology Acquisition, which simply states his agreement that cancelling the solicitation and starting over is the proper course of action. Prelim. AR 747, 748, 750. This is not to suggest the Agency will be unable to produce additional documentation in the complete administrative record to support the rationale of its decision. However, at this juncture, with only a preliminary administrative record, there is not much evidence demonstrating what facts the Agency considered, nor is there a meaningful articulation of the basis for its decision.[7] *See State Farm*, 463 U.S. at 43; *Fla. Power & Light*, 470 U.S. at 744.

Accordingly, the likelihood of success factors weigh both for and against Plaintiff. It has demonstrated some likelihood of success on the merits vis-à-vis the Agency's decision to forego

---

[7] Plaintiff alleges the Agency's decision also violates FAR § 1.602-2(b). ECF No. 29 at 17–18. As far as the Court can discern, Plaintiff's FAR claim mirrors its arbitrary-and-capricious claim. *See id.* at 18 ("The Agency's decision to cancel the Solicitation was arbitrary and, thus, violated FAR § 1.602-2."). Accordingly, no separate analysis for the purpose of the likelihood of success factor is necessary.

14

the corrective action and cancel the solicitation (at least on the current limited record), and there is no jurisdictional obstacle to the Court independently entertaining those claims.   However, Plaintiff has not demonstrated a likelihood that the Court has jurisdiction to review or enjoin the task order to Peraton.

        2.    <u>Irreparable Harm</u>

Plaintiff must "demonstrate that irreparable injury is *likely*," not just a mere possibility. *Winter*, 555 U.S. at 22 (emphasis added).  To assess irreparable harm, the "relevant inquiry . . . is whether plaintiff has an adequate remedy in the absence of an injunction." *Magellan Corp. v. United States*, 27 Fed. Cl. 446, 447 (1993).  Some decisions of this court have recognized that lost profits and business from a government contract may constitute an irreparable harm.  *See, e.g.*, *Springfield Parcel C, LLC v. United States*, 124 Fed. Cl. 163, 194 (2015) (noting that "[m]onetary relief under the Tucker Act is limited only to bid preparation and proposal costs, which 'are not equivalent to potential profits from a government contract'" (quoting *BayFirst Sols., LLC v. United States,* 102 Fed. Cl. 677, 696 (2012))); *Hosp. Klean of Tex., Inc. v. United States*, 65 Fed. Cl. 618, 624 (2005) ("[L]oss of profit, stemming from a lost opportunity to compete for a contract on a level playing field has been found sufficient to constitute irreparable harm."); *but see Minor Metals v. United States*, 38 Fed. Cl. 379, 381–82 (1997) ("[E]conomic harm without more, does not seem to rise to the level of irreparable injury.").  At least one decision has held, however, that a "procurement error coupled with loss of business does not necessarily require injunctive relief." *Hawpe Constr., Inc. v. United States*, 46 Fed. Cl. 571, 582 (2000).

Plaintiff contends the Court may presume it will be irreparably harmed, absent preliminary injunctive relief, based on Plaintiff's lost opportunity to compete under the now-cancelled solicitation.  ECF No. 29 at 19; ECF No. 32 at 8–9.  Plaintiff does not provide any meaningful

explanation of the alleged irreparability of its injury but, in support, cites several cases recognizing that the loss of potential work and profits constitutes irreparable harm for purposes of granting a permanent injunction. *See* ECF No. 29 at 19 (citing *Remington Arms Co., LLC v. United States*, 126 Fed. Cl. 218, 232–33 (2016); *MORI Assocs.*, 102 Fed. Cl. at 552–53; *Contracting, Consulting, Eng'g LLC v. United State*s, 104 Fed. Cl. 334, 335 (2012)). But whether Plaintiff is ultimately entitled to injunctive relief upon the Court's final determination in this matter is not the question before the Court now; rather, the focus is on any alleged irreparable harm that may be incurred *during the pendency of the litigation* absent preliminary relief. *See Sierra Mil. Health Servs. v. United States*, 58 Fed. Cl. 573, 582 (2003) (evaluating whether disappointed bidder was entitled to preliminary injunction halting transition work, during the pendency of a protest, that was necessary for awardees to begin actual performance of contracts at a future date).

Here, Plaintiff has made no showing in that regard. Moreover, if successful in its protest and the cancellation decision is set aside, Plaintiff will not have suffered any lost opportunity to compete. Even if unsuccessful, the Agency intends to re-compete the solicitation, Prelim. AR 750, and there is nothing in the record to indicate that Plaintiff would be ineligible to compete under the new solicitation, *cf. MORI Assocs.*, 102 Fed. Cl. at 516; *PGBA, LLC v. United States*, 60 Fed. Cl. 196, 221 (2004) (acknowledging loss of opportunity to fairly compete for a contract may qualify as an irreparable injury where protester demonstrates that it will "'inevitably' suffer harm" consequently). Accordingly, Plaintiff has not established it will suffer any irreparable injury absent a preliminary injunction.

Assuming Plaintiff has demonstrated irreparable harm, Plaintiff also fails to persuade the Court that preliminarily enjoining the task order would remedy such harm. *See Lewis v. Casey*, 518 U.S. 343, 357 (1996) (explaining scope of injunctive relief "must of course be limited to the

inadequacy that produced the injury in fact"); *Gemveto Jewelry Co. v. Jeff Cooper Inc.*, 800 F.2d 256, 259 (Fed. Cir. 1986) ("[I]njunctive relief should be narrowly tailored . . . ."). Plaintiff's alleged harm seems to derive directly from the Agency's cancellation decision, not from the current performance of the task order. The Court, therefore, does not grasp how enjoining the task order would preserve the parties' relative positions or maintain the status quo until a decision on the merits.[8] *See Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1578 (Fed. Cir. 1983) ("A preliminary injunction will normally issue only for the purpose of preserving the status quo and protecting the respective rights of the parties pending final disposition of the litigation."). As Defendant noted at oral argument, an injunction that *would be* narrowly tailored to Plaintiff's alleged harm would either rescind the cancellation of the solicitation and/or prevent the IRS from moving forward with re-competing the solicitation.[9] Plaintiff's Motion does not request such relief.

The irreparable harm factor, therefore, weighs heavily against granting preliminary relief, and on that basis alone the Motion should be denied. *See Chamberlain Grp.*, 676 F. App'x at 984.

---

[8] Indeed, Plaintiff does not dispute that it is ineligible to perform work under an Alliant 2 task order. Accordingly, if the Court enjoined Peraton's performance of such task order, it is not at all evident that IRS would procure IT services on an interim basis from Plaintiff. *See* ECF No. 31 at 14.

[9] At oral argument, Plaintiff's counsel asserted for the first time that it was seeking a more limited injunction, which would permit a contractor to fulfill—in a narrowly-tailored fashion—the IRS's need for only the most critical services that are the subject of Peraton's task order. Counsel, however, provided no explanation of how narrowing the scope of the bridge contract would more particularly remedy Plaintiff's alleged harm, what authority the Court possesses to instruct the Government on how it should go about procuring services under the contract, or how the Court could adequately describe the scope of such injunctive relief under RCFC 65(d)(1).

3.    Remaining Factors

Under the remaining factors, the Court must weigh the harm suffered by the movant, if the motion is not granted, against the harm to the Government and any third-party intervenor if the motion is granted. *Akal Sec. Inc. v. United States*, 87 Fed. Cl. 311, 320 (2009). Additionally, the Court must decide if it is in the public's interest to issue the preliminary injunction. *Winter*, 555 U.S. at 24 (cautioning courts to "pay particular regard for the public consequences in employing the extraordinary remedy of injunction" (quoting *Weinberger v. Romero-Barcelo,* 456 U.S. 305, 312 (1982))).

Plaintiff contends it continues to suffer harm from the lost opportunity to compete, while the Agency would suffer no harm in completing its corrective action. ECF No. 29 at 21. It further asserts that preliminary injunctive relief would serve the public interest by preserving: (1) the integrity of the procurement process and (2) the Court's ability to redress violations of procurement laws and regulations. *See id.* According to Defendant, the preliminary injunctive relief sought would result in a lapse in services needed to support IRS's tax administration systems and applications, which would lead to serious harm to Treasury Department operations and to taxpayers. *See* ECF No. 30 at 24; Decl. of Aaron Francesconi ¶ 12, ECF No. 30-1. Peraton also describes the harms that would result from enjoining performance of the task order, including economic loss as well as the loss of valuable personnel. *See* ECF No. 31 at 26.

The balance skews decidedly against granting preliminary injunctive relief. Defendant and Peraton have asserted with specificity a number of concrete, serious harms that would be caused by even a temporary lapse in services. The potential disruption to the efficient administration of the nation's tax system far outweighs the non-specific, policy-based harms alleged by Plaintiff. *See Munilla Constr. Mgmt., LLC v. United States*, 130 Fed. Cl. 131, 137 (2016) (finding the

balance of hardships weighs in favor of the Government and Intervenor when work under a contract has begun and it would prove disruptive to halt such work only to resume it at a subsequent time); *Aero Corp., S.A. v. United States*, 38 Fed. Cl. 237, 242 (1997) ("[A] procuring agency should be able to conduct procurements without excessive judicial infringement upon the agency's discretion."). For the same reasons, the Court finds that the potentially serious fiscal impact that would result from enjoining Peraton's performance of the task order is not in the public interest.

### III.   CONCLUSION

Accordingly, Plaintiff's Motion for Preliminary Injunction is **DENIED** and Plaintiff's initial Motion for Preliminary Injunction, filed concurrently with the Complaint, is **DENIED AS MOOT**. The parties shall submit **by no later than October 4, 2021** a joint status report proposing a schedule for further proceedings.

This opinion and order will be unsealed in its entirety after October 11, 2021 unless the parties submit **by no later than October 6, 2021** an objection specifically identifying the protected information subject to redaction. Any objecting party must submit a proposed redacted version of the decision and provide the reason(s) supporting the party's request for redaction.

**SO ORDERED.**

Dated: September 27, 2021                          */s/ Kathryn C. Davis*
                                                   KATHRYN C. DAVIS
                                                   Judge