## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

### NOT FOR PUBLICATION

| | |
|---|---|
| ———————————————————— ) | |
| HARMONIA HOLDINGS GROUP, LLC, ) | |
| ) | |
| Plaintiff, ) | No. 21-1704C |
| ) | |
| v. ) | Filed: January 25, 2022 |
| ) | |
| THE UNITED STATES, ) | Re-issued: February 9, 2022 |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| PERATON, INC., ) | |
| ) | |
| Defendant-Intervenor. ) | |
| ———————————————————— ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant's request to supplement the Administrative Record with a two-page memorandum, signed and dated October 28, 2021, from the Acting Director of the Office of Information Technology Acquisition ("OITA") at the Internal Revenue Service ("IRS"). *See* Def.'s Mot. to Suppl. Admin. R., ECF No. 51. The history leading up to this request is familiar to the parties. In its September 27, 2021 Order denying Plaintiff's Motion for a Preliminary Injunction, the Court observed that Defendant's Preliminary Administrative Record did not provide much evidence showing what facts the IRS considered in concluding that the procurement at issue in this protest should be cancelled or "a meaningful articulation of the basis for [that] decision." Op. & Order at 14, ECF No. 38 (public version). Citing this concern, Defendant subsequently moved to voluntarily remand the case so that the IRS could elaborate on its cancellation decision. *See* Def.'s Mot. for Voluntary Remand, ECF No. 39 (public version). The

Court denied the remand motion, finding that at this procedural stage any request to submit extra-record material should be made instead via a motion to supplement the administrative record. *See* Mem. Op. & Order at 2, 4, ECF No. 43.

Pursuant to the briefing schedule adopted by the Court, Defendant filed its motion to supplement on December 8, 2021, attaching the Acting Director's memorandum. In the memorandum, the Acting Director outlines the timeline of the relevant procurement and the IRS's subsequent corrective action. *See* Mem. from Steven R. Brand, ECF No. 51-1. He explains that the IRS extended to July 25, 2021, the bridge contract under which the incumbent (Northrop Grumman Systems, now Peraton) was performing services so as to allow enough time for the IRS to complete the corrective action and make any changes to the contract awards without risking a lapse in service. *See id.* at 1. However, by May 2021, the assigned Technical Evaluation Panel ("TEP") had been unable to adequately complete a Technical Evaluation Report ("TER") that addressed all evaluation factors necessary to properly implement the corrective action. *See id.* Additionally, beginning in March 2021, the IRS received indications that industry lacked confidence in the IRS's ability to execute the procurement. *See id.*

The Acting Director then describes a meeting on May 20, 2021, during which he discussed the procurement with OITA senior managers who recommended cancellation based on the unlikeliness of the corrective action being completed by July 25 and the potential of TEP bias against Northrop Grumman. *Id.* The memorandum identifies the topics discussed at the meeting, including, among other things, the lack of vendor confidence in the integrity of the procurement process, risk of protests to any contract award, and the likelihood that a sufficient TER could not be completed in the relevant timeframe. *Id.* The memorandum explains the Acting Director's determination, based on "recurring problems with the TER and the TEP's inability to support its

technical ratings," "that a lapse in services was inevitable unless a decision was made swiftly." *Id.* at 2. The Acting Director also identifies subsequent meetings with the legal and program offices during which he explained his intent to cancel the procurement and solicited alternative courses of action. *Id.*

Finally, the Acting Director explains the rationale for his cancellation decision. Based on the facts and history of the procurement, he determined it was necessary to "start over." *Id.* Accordingly, he cancelled the procurement with the intent of assigning a new contracting officer ("CO") to issue a new solicitation with a new team of technical experts, citing cancellation as "the most effective and efficient way" to ensure integrity of the process, meet the spirit of the corrective action, meet the agency's needs, and regain the trust and confidence of industry. *Id.*

As the Federal Circuit has explained, parties in bid protest cases may supplement the record, but their ability to do so is "limited" because "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009) (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). Thus, an administrative record "should be supplemented only if the existing record is insufficient to permit meaningful review consistent with the [Administrative Procedure Act ("APA")]." *Id.* at 1381. Courts have found supplementation appropriate under this standard where the supplemental material is "necessary to help explain an agency's decision . . . , particularly when a subjective value judgment has been made but not explained," *Orion Int'l Techs. v. United States*, 60 Fed. Cl. 338, 343 (2004) (citing *Camp*, 411 U.S. at 142–43); helps explain what the contracting officer reviewed and considered in reaching his or her decision, *Precision Standard, Inc. v. United States*, 69 Fed. Cl. 738, 747 (2006), *aff'd*, 228 F. App'x 980 (Fed. Cir. 2007); or "correct[s] mistakes and fill[s] gaps" in the administrative

3

record, *Pinnacle Sols., Inc. v. United States*, 137 Fed. Cl. 118, 131 (2018) (citing *Axiom*, 564 F.3d at 1379–81).

When an agency seeks to supplement an administrative record with a document created after the fact, courts must beware of post-hoc rationalization, *i.e.*, "any rationale that departs from the rationale provided at the time the procuring agency made its decision." *Raytheon Co. v. United States*, 121 Fed. Cl. 135, 158 (2015) (citing *CRAssociates, Inc. v. United States*, 95 Fed. Cl. 357, 377 (2010)), *aff'd*, 809 F.3d 590 (Fed. Cir. 2015). This is because allowing agencies to use such "belated justifications . . . can upset 'the orderly functioning of the process of review'" and force "litigants and courts to chase a moving target." *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1909 (2020) (quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943)). But a further explanation of the agency's decision-making process does not amount to a post-hoc rationalization so long as it consists of "explanatory materials that do not offer new rationales for past decisions and that illuminate the methodology the agency employed in making its determination." *D & S Consultants, Inc. v. United States*, 101 Fed. Cl. 23, 35 (2011) (citing *CRAssociates*, 95 Fed. Cl. at 376 n.15), *aff'd*, 484 F. App'x 558 (Fed. Cir. 2012); *see Regents*, 140 S. Ct. at 1908 (agency decision-maker's explanation on remand "limited to the agency's original reasons").

Defendant argues that supplementing the record with the Acting Director's memorandum is necessary for meaningful judicial review because, while documents in the record strongly imply and create a reasonable inference for the basis of the cancellation, there is no express statement explaining the rationale of the Acting Director's decision to that effect. *See* ECF No. 51 at 7–8. Plaintiff asserts that supplementation is inappropriate because the memorandum (1) is a post-hoc rationalization created in the heat of litigation; (2) is the only explanation for cancellation that the

IRS has ever provided; and (3) cannot properly fill gaps in the record where the IRS had an obligation to document its rationale at the time it made the cancellation decision.[1]  *See* Pl.'s Resp. to Def.'s Mot. to Suppl. Admin. R., ECF No. 53.

The Court agrees with Defendant that supplementing the record is necessary for meaningful judicial review in this case.  As the Court noted in its opinion denying preliminary injunctive relief, the only materials in the Preliminary Administrative Record that potentially demonstrated the factors considered by the Acting Director and the reasoning for his decision were a PowerPoint presentation and a brief email in which the Acting Director simply stated his agreement that cancelling the procurement was the proper course of action.  *See* ECF No. 38 at 14. In addition to these two documents, *see* Admin. R. 4938, 5149–54, ECF No. 47 ("AR"), the final Administrative Record includes numerous contemporaneous emails and other documents involving the CO, her manager, and other OITA managers that add context to the concerns IRS officials (and third parties) had about the progress of the corrective action and integrity of the procurement, *see, e.g.*, AR 3124, 3126, 3876, 3898, 3907, 3913, 3920, 3929, 3938, 3945, 3954, 4083–84, 4155–57, 4928, 5155–56.  But they still show little of the Acting Director's own involvement, considerations, and reasoning necessary to evaluate his decision under the APA standard of review.

On the current record, the Acting Director's brief email—which is the only express statement from the agency decision-maker in this case—states that he considered recommendations of OITA managers, spoke with the IRS's legal office, and agreed that cancellation was the right decision.  *See* AR 4938.  From the record, it is not clear how those

---

[1] Defendant-Intervenor Peraton supports the motion.  *See* Def.-Intervenor's Resp. to Def.'s Mot. to Suppl. Admin. R., ECF No. 52.

recommendations were conveyed, what specific facts/recommendations the Acting Director considered, and importantly the specific grounds on which he based his determination.   The memorandum provides that further explanation, connecting the concerns raised in other materials in the record with the actual decision at issue in this case.   *See generally* ECF No. 51-1 (identifying meetings with various IRS offices, describing content of discussions and recommendations presented, and explaining basis of decision); *see also Precision Standard*, 69 Fed. Cl. at 747; *MVS USA, Inc. v. United States*, 111 Fed. Cl. 639, 644 n.7 (2013).   Indeed, Plaintiff argues that the Acting Director's memorandum is the only explanation for cancellation that the IRS "has ever provided (other than in legal argument)."   ECF No. 53 at 3.   In the Court's opinion, this reinforces that the memorandum is necessary for this Court to conduct meaningful judicial review of the merits of Plaintiff's protest.

Even though the memorandum was drafted after the cancellation decision (and after this protest was filed), the Court agrees that the Acting Director's memorandum is not improper post-hoc rationalization.   The Court looks to the memorandum's content, not simply the date it was signed, to determine whether it permissibly reflects a further explanation of the Acting Director's "reasoning *at the time of the agency action*" or impermissibly asserts some new rationale.   *Regents*, 140 S. Ct. at 1907 (emphasis in original) (internal quotation omitted); *see Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 6 (D.C. Cir. 2006) (explaining that the post-hoc rationalization rule "is not a time barrier which freezes an agency's exercise of its judgment after an initial decision has been made and bars it from further articulation of its reasoning" (internal quotation omitted)).   That being said, because litigation affidavits are widely disfavored in APA review cases, the memorandum "must be viewed critically."   *Regents*, 140 S. Ct. at 1908 (internal quotation omitted).

Here, the Administrative Record indicates that the Acting Director approved the cancellation after considering the recommendations of OITA managers and discussing the matter with the IRS's legal office.  AR 4938.  The memorandum documents the recommendations made to the Acting Director and the topics of discussion in his meetings with OITA, legal, and program officials, along with elaborating the rationale of his decision at the time it was made based on these considerations.  *See* ECF No. 51-1 at 1–2.  For example, the memorandum emphasizes concerns about the TEP's ability to complete the TER, a lack of internal confidence in the agency's ability to make a timely award combined with concerns of a lapse in a critical service, communications received from industry and vendors indicating a lack of confidence and trust in the IRS's ability to execute the corrective action, and indications of potential bias by the TEP against one of the bidders, all of which are consistent with documents already in the record.  *Compare id. with* AR 3124, 3126, 3876, 3898, 3907, 3913, 3920, 3929, 3938, 3945, 3954, 4083–84, 4155–57, 4928, 4938, 5149–56.  Because the memorandum does not appear to introduce *new* reasons for the cancellation and merely ties those parts of the Administrative Record together, concerns of post-hoc rationalization do not warrant denial of Defendant's motion.  *See, e.g., D & S Consultants*, 101 Fed. Cl. at 35–36; *PAE Applied Techs., LLC v. United States*, 154 Fed. Cl. 490, 517 (2021).

Finally, the Court rejects Plaintiff's argument that supplementation is per se inappropriate because the IRS had an obligation to document its rationale when it made the cancellation decision. *See* ECF No. 53 at 4.  The Federal Circuit has explained that "[c]ontracting officers are not obligated by the APA to provide written explanations for their actions" because those actions "are not adjudicatory decisions to be made on the record after a hearing . . . [n]or are they formal rulemakings."  *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1337 (Fed. Cir. 2001) (citing *John C. Grimberg Co. v. United States*, 185 F.3d 1297, 1303 (Fed.

Cir. 1999)).   Plaintiff does not point to any applicable statutory or regulatory documentation requirement.   Nor do Plaintiff's cited cases provide any support for its proposition.  *See* ECF No. 53 at 4–5 (citing, *inter alia*, *Tolliver Grp., Inc. v. United States*, 151 Fed. Cl. 70, 108 (2020) (noting the absence of a formal written cancellation decision and finding a later drafted memorandum did not provide a rational basis for the decision, not because it was drafted after the decision but because its explanation was inadequate)).   Even setting aside whether the IRS was required to issue a formal decision, Plaintiff has not cited any authority showing that supplementation is only available in cases where no written decision was required.[2]  *See id.* at 4 (citing *Jacobs Tech. Inc. v. United States*, 100 Fed. Cl. 198, 209 (2011) (summarizing *Impresa*'s holding that a court may order a further explanation even "where the contracting officer is not required to take action or document or explain a decision") (citing *Impresa*, 238 F.3d at 1339)).   Accordingly, denying the motion on this ground is inappropriate.[3]

---

[2]   The thrust of Plaintiff's argument seems to be that the IRS's failure to document its rationale is itself proof that the decision lacked a rational basis.  *See* ECF No. 53 at 5.  Plaintiff is free to pursue that argument on the merits notwithstanding this decision to the extent it believes that fact undermines the IRS's decision-making process.  But it is not necessarily correct that a failure to adequately document an agency action renders the action arbitrary and capricious per se.  Where an agency's failure to adequately explain a decision precludes effective judicial review, the typical remedy is to order the decision-maker to provide further explanation before determining the validity of the decision on the merits.  *See, e.g.*, *Camp*, 411 U.S. at 143; *Impresa*, 238 F.3d at 1338; *Am. K-9 Detection Servs., LLC v. United States*, No. 20-1614, 2021 WL 1086225, at *23–24 (Fed. Cl. Mar. 19, 2021) (staying dispositive motions and ordering remand without vacatur for further agency explanation).

[3]  At the end of its brief, Plaintiff requests permission to conduct depositions of certain agency officials, including the Acting Director, in the event that the Court grants Defendant's motion.  *See* ECF No. 53 at 5 ("If the Court is inclined to allow the Agency to supplement the record with Mr. Brand's explanation, then it should do so with depositions from Mr. Brand and all those present at the meeting in which the PowerPoint presentation was shared[.]").  The Court does not believe this is one of the "rare circumstances" in which a deposition of an agency decision-maker, or those involved in the decision-making process, would be warranted.  *Impresa*, 238 F.3d at 1338 (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).  Plaintiff's

For these reasons, Defendant's Motion to Supplement the Administrative Record (ECF No. 51) is **GRANTED**.  The Acting Director's memorandum (ECF No. 51-1) is hereby supplemented to the Administrative Record in this case.

In accordance with the parties' proposed schedule, briefing for Cross-Motions for Judgment on the Administrative Record is as follows:

1.      Plaintiff shall file its motion on or before February 8, 2022;

2.      Defendant and Intervenor shall file their responses to Plaintiff's motion and cross-motions on or before February 22, 2022;

3.      Plaintiff shall file its reply on or before March 1, 2022; and

4.      Defendant and Intervenor shall file their replies on or before March 8, 2022.

This order will be unsealed in its entirety after February 8, 2022, unless the parties submit **by no later than February 4, 2022** an objection specifically identifying the protected information subject to redaction.  Any objecting party must submit a proposed redacted version of the decision and provide the reason(s) supporting the party's request for redaction.

**SO ORDERED.**

Dated: January 25, 2022                              _/s/ Kathryn C. Davis_
                                                          KATHRYN C. DAVIS
                                                          Judge

---

tacked-on request identifies none of the uncommon circumstances that may justify depositions in an APA review case.